# In the United States Court of Federal Claims

BID PROTEST
No. 12-561C
(Filed Under Seal: July 25, 2013)
(Reissued for Publication: July 31, 2013)[*]
**TO BE PUBLISHED**

|  |  |  |
|---|---|---|
| MANAGENT & TRAINING CORPORATION, | ) ) ) ) ) ) ) ) ) ) ) | Pre-Award Bid Protest; Small Business Set Aside; Contract to Operate Dayton Job Corps Center; Workforce Investment Act of 1998; Selection of Operators "On a Competitive Basis"; 29 U.S.C. § 2887(a); "Rule of Two"; FAR 19.502-2(b). |
| Plaintiff, | | |
| v. | | |
| THE UNITED STATES, | | |
| Defendant. | | |

   G. Lindsay Simmons, Jackson Kelly PLLC, Washington, D.C., for plaintiff.  Hopewell H. Darneille III, Michael J. Schrier, Katie A. Calogero, Jackson Kelly PLLC, Washington, D.C., of counsel.

   Michael D. Snyder, Trial Attorney, Patricia M. McCarthy, Assistant Director, Jeanne E. Davidson, Director, Commercial Litigation Branch, Stuart F. Delery, Acting Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C., for defendant.  David R. Koeppel, Peter J. Dickson, Savannah L. Wilson, Department of Labor, Washington, D.C., of counsel.

## OPINION AND ORDER

GEORGE W. MILLER, Judge

---

[*] This Opinion and Order was originally filed under seal on July 25, 2013 (docket entry 72) pursuant to the protective order entered on September 13, 2013 (docket entry 14).  The parties were given an opportunity to advise the Court of their views with respect to what information, if any, should be redacted under the terms of the protective order.  The parties filed a Joint Status Report with proposed redactions on July 30, 2013 (docket entry 76).  The Court has reviewed the parties' proposed redactions and concluded that they should be accepted.  Accordingly, the Court is reissuing its Opinion and Order dated July 25, 2013, with redactions indicated by three consecutive asterisks within brackets ([***]).

Plaintiff, Management & Training Corporation ("MTC"), filed this bid protest action (docket entry 1) on September 4, 2012, along with a request for a preliminary injunction (docket entry 2). Plaintiff challenges the decision of the United States Department of Labor ("DOL") to set aside for small businesses the solicitation for operation of the Job Corps Center ("JCC") in Dayton, Ohio. Because it is not a small business, MTC, the incumbent contractor, has therefore been precluded from submitting a proposal. The matter is now before the Court on the parties' motions for judgment on the administrative record, in addition to defendant's motion to dismiss and plaintiff's motion to supplement the administrative record.

## I. Background

### A. *Job Corps*

Job Corps is a national residential training and employment program administered by the Employment Training Administration ("ETA") of DOL. AR Tab 1, at 2. JCCs throughout the United States provide technical-skills training to disadvantaged and at-risk youth to prepare them for employment, further education, or the armed forces. AR Tab 1, at 2. The operator of each JCC is expected to provide "a full range of services, including basic and advanced academic education, career technical (vocational) training, counseling, recreation, behavior management, food services, health services, and transition and placement services." Compl. ¶ 13.

MTC operates eighteen JCCs and is a subcontractor on three other JCC contracts. *Id.* It has operated the Dayton JCC since March 1, 1993. *Id.* ¶ 3. Plaintiff asserts that its "outstanding performance of the past 19+ years . . . has effected a stunning change" by lifting the Dayton JCC's ranking from ninety-third out of one hundred five JCCs in 1992 to third-best in the country in 2010. *Id.* MTC is categorized as a large business by the applicable North American Industry Classification System code. *Id.*

### B. *Other JCC Procurements and Protests*[1]

Recently several large businesses that operate JCCs, including MTC, have protested DOL's small business set aside decisions. The first such protest was filed in this court (No. 11-665) by Adams & Associates, Inc. ("Adams") on October 13, 2011 and involved the JCC in Gadsden, Alabama. In response to that protest, DOL took corrective action by terminating the solicitation and reconducting market research for a new set aside decision. Order, *Adams & Assocs., Inc. v. United States*, No. 11-665 (docket entry 26, Nov. 16, 2011).

As part of the new market research to determine whether the Gadsden JCC contract should once again be set aside, DOL issued a new Request for Information ("RFI"), also known as a "Sources Sought Notice," on December 2, 2011. Pl.'s Mot. Leave to Adopt Process Set Companion Cases & Submission Appendix ("App.") Ex. 16 (docket entry 52, Jan. 30, 2013). The new RFI did not include requirements that contractors' responses describe their past performance operating JCCs in the past three years, their experience operating multiple JCCs

---

[1] These facts are taken from documents plaintiff asserts should be added to the administrative record and are set forth for the purpose of resolving plaintiff's motion to supplement the administrative record.

concurrently, whether they maintain an approved purchasing system, whether they have a current negotiated indirect cost rate issued by a cognizant agency, and whether they maintain a written procurement policy. *Compare id.* at 3, *with* App. Ex. 8, at 3.

On March 9, 2012, DOL once again determined that it would set aside the Gadsden JCC contract for small businesses. App. Ex. 21, at 2–6. On June 25, 2012, Adams filed another bid protest in this court (No. 12-409) again challenging DOL's decision to set aside the Gadsden JCC contract. On March 27, 2013, Judge Williams denied Adams's protest. *See* Redacted Hr'g Tr. ("Hr'g Tr.") 27:20–21, *Adams & Assocs., Inc. v. United States*, No. 12-409C (Fed. Cl. May 14, 2013) [hereinafter *Adams (Gadsden)*]. An appeal in that case is now pending before the United States Court of Appeals for the Federal Circuit (No. 2013-5080).

On April 6, 2012, DOL posted a Presoliciation Notice requesting proposals from small businesses interested in operating the Blue Ridge JCC in Marion, Virginia. App. Ex. 26. The set aside was supported by market research obtained through an RFI that requested responses to the same capability criteria as the second Gadsden RFI. App. Ex. 17, at 3. The large-business incumbent operator of the Blue Ridge center, Res-Care, Inc. ("Res-Care"), filed a protest in this court on April 18, 2012 (No. 12-251). On November 2, 2012, Judge Bruggink denied Res-Care's protest. *Res-Care, Inc. v. United States*, 107 Fed. Cl. 136, 137 (2012). Res-Care has also appealed to the Federal Circuit (No. 2013-5035).

On April 26, 2012, DOL issued two RFIs, each for operation of multiple JCCs across the country. App. Ex. 27 (the "Five-Center RFI") (requesting information relating to operation of JCCs located in Devens, MA ("Shriver"); Tulsa, OK; New Haven, CT; San Diego, CA; and Sacramento, CA); App. Ex. 28 (the "Seven-Center RFI") (requesting information relating to operation of JCCs located in Chicago, IL ("Paul Simon"); Montgomery, AL; Memphis, TN ("Dr. Benjamin L. Hooks"); Detroit, MI; Joliet, IL; Morganfield, KY ("Earl C. Clements"); and Little Rock, AR). These RFIs allowed respondents to submit one general statement of their capability to operate JCCs, along with a separate statement of their interest in operating JCCs in specific locations. App. Ex. 27, at 4; App. Ex. 28, at 3. These RFIs also requested responses to the same capability criteria as the Gadsden and Blue Ridge RFIs.

DOL reviewed responses to the Five-Center RFI and determined that two small businesses, [***] and [***], were capable of operating JCCs at fair market prices. App. Ex. 43, at 6–7. DOL also reviewed responses to the Seven-Center RFI and determined four small businesses to be capable. App. Ex. 34, at 3. Three of these small businesses—[***], [***], and [***]—had already been awarded JCC contracts. *Id.* A fourth, [***], had not previously operated a JCC. *Id.*

These two RFIs resulted in three more protests relating to the Paul Simon, Montgomery, and Shriver JCCs. Plaintiff MTC is also the incumbent contractor operating the Paul Simon JCC, and it filed a bid protest complaint on October 10, 2012 relating to DOL's decision to set aside the follow-on contract (No. 12-683). Judge Block heard oral argument on the parties' motions for judgment on the administrative record on June 13, 2013, and the matter is pending. Dynamic Educational Systems, Inc. ("DESI"), the incumbent contractor for the Montgomery JCC, filed its complaint on October 26, 2012 (No. 12-730). Adams, which operated the Shriver JCC (in addition to the Gadsden JCC), also filed a bid protest complaint October 26, 2012 (No.

3

12-731). On February 15, 2013, Judge Bruggink granted the Government's motion for judgment on the administrative record in each of these two cases. *Dynamic Educational Systems, Inc. v. United States*, 109 Fed. Cl. 306 (2013) [hereinafter *DESI*]; *Adams & Assocs., Inc. v. United States*, 109 Fed. Cl. 340 (2013) [hereinafter *Adams (Shriver)*]. Adams has appealed this decision to the Federal Circuit (No. 2013-5077).

Plaintiff asserts that, at the time of the Dayton set aside decision, DOL had already decided to set aside a total of twelve JCC contracts for small businesses based on the capability of as few as three small businesses. Pl.'s Mot. for J. AR ("Pl.'s Mot.") 13 (docket entry 61, Mar. 28, 2013).

C. The Dayton JCC Procurement

On June 27, 2012, DOL posted an RFI related to the Dayton JCC on FedBizOpps. AR Tab 1.[2] The RFI requested responses to the same modified capability criteria as the previous RFIs. DOL received six responses from small businesses and one from a large business. AR Tab 10, at 72.

Upon receiving the seven responses, ETA prepared a spreadsheet analyzing each respondent's capability to meet the contract requirements. AR Tab 10, at 79–80.[3] Of the seven respondents, DOL found two small businesses, [***] and [***] to be capable of operating the Dayton JCC. AR Tab 10, at 72. On August 20, 2012, the contracting officer, Jillian Matz,[4] signed a determination memorandum setting aside the Dayton JCC contract for small businesses. AR Tab 10, at 71–73. The amended RFI and the spreadsheet analyzing each respondent's capability were attached to the memorandum. AR Tab 10, at 74–80. The memorandum appears to have been designed to document DOL's compliance with regulations known as the "Rule of Two."[5] The Rule of Two sets forth conditions under which procurements should be set aside for small businesses.

FAR 19.502-2(b), the primary source of the "Rule of Two," provides:

---

[2] DOL posted an amended RFI on July 6, 2012. AR Tab 2.

[3] The initial review was assigned to Stephen Fuller, who was instructed to "basically look[] to see whether each offeror addressed the capability area [requested in the RFI]. The quality of the response is assessed later when a technical evaluation panel reviews proposals." Notice of Filing Ex. A, at 59 (docket entry 58, Mar. 4, 2013).

[4] Jillian Matz is the Director of the Job Corps Procurement Branch of ETA's Office of Contract Management.

[5] The Workforce Investment Act ("WIA") states that the "Secretary may . . . prescribe rules and regulations to carry out this chapter only to the extent necessary to administer and ensure compliance with the requirements of this chapter." 29 U.S.C. § 2939(a) (2006). DOL has since issued regulations providing that the Federal Acquisition Regulation ("FAR") and the Department of Labor Acquisition Regulation ("DOLAR") apply to JCC procurements. 20 C.F.R. §§ 670.310(a), 670.320(a).

Before setting aside an acquisition under this paragraph, refer to [FAR] 19.203(c). The contracting officer shall set aside any acquisition over $150,000 for small business participation when there is a reasonable expectation that:

> (1) Offers will be obtained from at least two responsible small business concerns . . . ; and
>
> (2) Award will be made at fair market prices. Total small business set-asides shall not be made unless such a reasonable expectation exists . . . . Although past acquisition history of an item or similar items is always important, it is not the only factor to be considered in determining whether a reasonable expectation exists.

48 C.F.R. § 19.502-2(b). DOL's own regulation is substantially similar. *See* 48 C.F.R. § 2919.502.[6]

Indeed, DOL's primary justification for its decision to set aside the Dayton JCC contract for small business concerns is based on FAR 19.502-2. As Contracting Officer Jillian Matz states in her set aside memo:

> In accordance with FAR Subpart 19.502-2, total small business set-asides, as Contracting Officer (CO), I determine that this procurement should be conducted as a total small business set-aside. FAR Subpart 19.502-2(b) says that the CO shall set aside any acquisition over $150,000 for small business participation when there is a reasonable expectation that offers will be received from at least two responsible small business concerns and award will be made at fair market prices.

AR Tab 10, at 72. DOL's Office of Small and Disadvantaged Business Utilization ("OSDBU") signed a DL1-2004 form agreeing with the set aside decision. AR Tab 11, at 96.

On August 23, 2012, DOL posted a presolicitation notice on FedBizOpps announcing that the solicitation of proposals for the continued operation of the Dayton JCC would be conducted as a small business set aside. AR Tab 12, at 97–99. This notice also stated that DOL would issue a Request for Proposal ("RFP") on September 6, 2012. AR Tab 12, at 97.

    *D.    Procedural History*

The Court held a telephonic status conference with the parties on September 5, 2012, during which DOL voluntarily agreed not to award a contract under the RFP until the Court

---

[6] DOLAR 2919.502 states, "Contracting officers will conduct market surveys specifically to determine whether procurements should be conducted . . . as small business set-asides. If a reasonable expectation exists that at least two responsible small businesses may submit offers at fair market prices . . . , then the procurement will be set aside for small business. Market surveys will be documented in all procurement actions not reserved for small businesses." 48 C.F.R. § 2919.502.

resolves this bid protest on the merits. On October 12, 2012, defendant filed an initial administrative record ("AR"). On November 7, 2012, the Court granted the parties' joint motion to supplement the AR (docket entry 26). On November 9, 2012, plaintiff filed a motion for judgment on the AR (docket entry 27), in which it also renewed its request for a preliminary injunction. On November 29, 2012, the Court denied plaintiff's motion for a preliminary injunction (docket entry 39).

Two days before the Court resolved plaintiff's request for a preliminary injunction, plaintiff filed a motion to further supplement the AR (docket entry 34, Nov. 27, 2012). The Court held oral argument on plaintiff's motion to supplement the AR on January 11, 2013. On January 30, 2013, plaintiff filed another motion to "adopt the process set in companion cases" (docket entry 52). To both of these motions, plaintiff attached numerous exhibits it wished to add to the AR. During a status conference on February 27, 2013, the Court ordered (docket entry 57) that plaintiff's proposed additions to the AR would be admitted into the Court's record, and the Court would determine whether to supplement the AR concurrently with its analysis of the parties' cross motions for judgment on the AR.

Plaintiff has now clarified that the set of these documents plaintiff wishes to add to the AR consists of the appendix to plaintiff's motion to adopt the process set in companion cases and two documents attached to plaintiff's motion for judgment on the AR. Plaintiff selected these documents from the administrative records of the other JCC protests. In general, plaintiff cites these documents to support its argument that DOL improperly "isolated" the Dayton procurement set aside decision instead of viewing it in the larger context of all JCC procurements.

Additionally, on March 4, 2013, defendant produced and filed 115 pages of emails (docket entry 58) which plaintiff asserts should also be included in the AR. In its notice of filing accompanying these emails, defendant opposed their inclusion in the AR on the basis that certain of the emails contain draft versions of documents that are already included in the AR in final form. Defendant cited *Blue Ocean Institute v. Gutierrez*, 503 F. Supp. 2d 366, 372–73 (D.D.C. 2007), and *Tafas v. Dudas*, 530 F. Supp. 2d 786, 796–97 (E.D. Va. 2008), for the proposition that "deliberative documents" should be excluded from the AR based on the agency's privilege. Defendant's briefs on the parties' motions for judgment on the AR do not mention this argument. Instead, defendant argues that extra-record evidence should be excluded. Def.'s Mot. to Dismiss and Cross-Mot. for J. on the AR ("Def.'s Mot.") 50 (docket entry 65, May 6, 2013). Unlike the documents plaintiff has submitted from the administrative records of other cases, these emails are not extra-record evidence. Instead, they are all specific to the set aside decision in this procurement. Moreover, given that defendant disclosed the emails to plaintiff, there is little privilege left to protect. Accordingly, these emails are proper for inclusion in the AR.

Pursuant to the Court's Order dated February 27, 2013, plaintiff filed a second motion for judgment on the AR. Plaintiff seeks a declaratory judgment and a permanent injunction prohibiting DOL from setting aside the Dayton JCC procurement for small businesses, or, in the alternative, a remand requiring DOL to reconduct its set aside analysis. On May 6, 2013, defendant filed its response to plaintiff's motion, along with a motion to dismiss pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") and a cross-motion for judgment on the AR (docket entry 65). On May 21, 2013, plaintiff filed a combined

opposition to defendant's motions to dismiss and for judgment on the AR and reply in support of plaintiff's motion for judgment on the AR ("Pl.'s Opp'n") (docket entry 67). On June 11, 2013, defendant filed a reply in support of both of its motions ("Def.'s Reply") (docket entry 70). The Court heard oral argument on July 18, 2013, during which time the parties confirmed that DOL has extended MTC's contract to operate the Dayton JCC through October 2013.

## II. Analysis

Plaintiff argues that DOL's decision to set aside the Dayton JCC procurement was improper because (1) DOL is prohibited by statute from setting aside JCC procurements, (2) DOL did not determine the set aside to be in the interest of ensuring that a fair proportion of JCCs are operated by small businesses, and (3) DOL's determinations that it reasonably expected at least two responsible small businesses to submit proposals and that the award would be made at a fair market price were arbitrary and capricious. Defendant responds that plaintiff is incorrect on all three counts and that the Court does not have jurisdiction to consider plaintiff's "fair proportion" argument.

### *A. Jurisdiction*

The Court has jurisdiction over this bid protest action—including the authority to grant injunctive relief—under the Tucker Act, as amended by the Administrative Dispute Resolution Act, Pub. L. No. 104-320, § 12, 110 Stat. 3870, 3874–76 (1996). 28 U.S.C. § 1491(b)(1) (2006) (granting the Court of Federal Claims jurisdiction to "render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award . . . or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement"). As the incumbent contractor and a prospective bidder, MTC is an "interested party" whose "direct economic interest would be affected by the award of the contract." *Am. Fed'n of Gov't Emps., AFL-CIO v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001) (quoting 31 U.S.C. § 3551(2) (Supp. IV 1998)). This is because MTC's exclusion from competition is "a non-trivial competitive injury which can be redressed by judicial relief." *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1361 (Fed. Cir. 2009) (quoting *WinStar Commc'ns, Inc. v. United States*, 41 Fed. Cl. 748, 763 (1998)) (internal quotation marks omitted).

Defendant does not challenge the Court's Tucker Act jurisdiction to hear this protest, but raises a specific jurisdictional defense to one of plaintiff's arguments. Plaintiff contends that DOL was required to determine that a set aside was "in the interest of assuring that a fair proportion of the total purchases and contracts for property and services for the Government in each industry category are placed with small-business concerns." 15 U.S.C. § 644(a). Defendant argues that the Court is without jurisdiction to consider plaintiff's contention because it challenges a high-level policy decision. Def.'s Mot. 8. In particular, defendant characterizes plaintiff's claim as a challenge to either the goals of DOL or the Small Business Administration ("SBA") for small business participation or the SBA's determination of which size standard is applied to operation of JCCs, and defendant asserts that the Court does not have jurisdiction to review these decisions.

Defendant mischaracterizes plaintiff's claim. Plaintiff contends that DOL is required to question whether a set aside of "an individual contract or specifically-identified class of contracts" is necessary to achieve a fair proportion of small business participation. Pl.'s Mot. 34. Plaintiff asserts that this requires consideration of the total number and value of all procurements in the industry, the number of small businesses that perform the work, and the number and value of contracts already set aside. *Id.* at 42. Plaintiff explicitly refrains from challenging the SBA's or DOL's aspirational goals for small business participation or the SBA's size-standard determination. *Id.* at 44–46; Pl.'s Opp'n 5–6. Defendant's motion to dismiss for lack of jurisdiction will therefore be denied.

    *B.*    *Legal Standards*

    1.    <u>Bid Protests</u>

The Court reviews pre-award agency procurement decisions under the standard of review contained in 5 U.S.C. § 706 (2012), asking only whether they have a rational basis and do not violate any applicable statute or regulation. 28 U.S.C. § 1491(b)(4); *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332–33 (Fed. Cir. 2001). Plaintiff must demonstrate that DOL committed a "clear and prejudicial" violation of applicable statutes or regulations or show that DOL's set aside decision "had no rational basis." *Impresa*, 238 F.3d at 1333.

    2.    <u>Supplementing the Administrative Record</u>

To "guard against courts using new evidence to 'convert the "arbitrary and capricious" standard into effectively de novo review,'" supplementation of the AR is proper only in certain limited circumstances. *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009) (quoting *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000), *aff'd*, 398 F.3d 1342 (Fed. Cir. 2005)). Materials that are properly part of the agency's record—those that were generated or considered by the agency or served as the basis of the agency's decision—may be added to "complete" the AR. *Joint Venture of Comint Sys. Corp. v. United States*, 100 Fed. Cl. 159, 167 (2011); *Linc Gov't Servs., LLC v. United States*, 95 Fed. Cl. 155, 158 (2010). The Court only supplements the AR with material not before the agency in "cases in which 'the omission of extra-record evidence precludes effective judicial review.'" *Axiom*, 564 F.3d at 1380 (quoting *Murakami*, 46 Fed. Cl. at 735). For example, this court has found extra-record information to be necessary for effective judicial review when it demonstrates that the agency failed to consider relevant information. *Diversified Maint. Sys., Inc. v. United States*, 93 Fed. Cl. 794, 801 (2010); *Allied Tech. Grp., Inc. v. United States*, 92 Fed. Cl. 226, 231 (2010); *Global Computer Enters. v. United States*, 88 Fed. Cl. 52, 62–63 (2009); *Totolo/King v. United States*, 87 Fed. Cl. 680, 692 (2009), *appeal dismissed and remanded sub nom. Totolo/King Joint Venture v. United States*, 431 F. App'x 895 (Fed. Cir. 2011).

    3.    <u>Judgment on the Administrative Record</u>

When deciding cross-motions for judgment on the administrative record pursuant to RCFC 52.1, the Court "examines whether the administrative body, given all the disputed and undisputed facts appearing in the record, acted in a manner that complied with the legal

standards governing the decision under review." *MORI Assocs., Inc. v. United States*, 102 Fed. Cl. 503, 518 (2011). The Court's "[f]actual findings are based on the evidence in the record, 'as if [the Court] were conducting a trial on the record.'" *Id.* (second alteration in original) (quoting *Bannum Inc. v. United States*, 404 F.3d 1346, 1357 (Fed. Cir. 2005)); *accord Harper v. United States*, 104 Fed. Cl. 287, 294 (2012). Accordingly, genuine issues of material fact do not necessarily preclude the Court from granting a motion for judgment on the administrative record. *Insight Sys. Corp. v. United States*, 110 Fed. Cl. 564, 572–73 (2013) (citing *Bannum*, 404 F.3d at 1356).

      C.     *DOL Did Not Violate Any Law or Regulation*

          1.     <u>WIA Does Not Prohibit Small Business Set Asides</u>

The Workforce Investment Act, Pub. L. No. 105-220, § 147, 112 Stat. 936, 1010 (1998), governs the selection of JCC operators. Section 147, codified at 29 U.S.C. § 2887 (Supp. V 2011), lists the entities that are eligible to operate JCCs, including federal, state, and local agencies; vocational education or residential vocational schools; and private organizations. § 2887(a)(1)(A). WIA also states that the "Secretary shall select on a competitive basis an entity to operate a Job Corps center." § 2887(a)(2)(A).

The Competition in Contracting Act ("CICA") establishes a system of rules for federal procurements. *See* 41 U.S.C. §§ 3301–3311 (Supp. V 2011). With certain exceptions, CICA requires agencies to conduct procurements with "full and open competition." 41 U.S.C. § 3301(a). One such exception provides that an "executive agency may provide for the procurement of property or services covered by section 3301 of this title using competitive procedures, but excluding other than small business concerns." § 3303(b). The parties dispute whether WIA also allows DOL to exclude "other than small business concerns" from certain chosen JCC procurements or instead prohibits such set asides.

The resolution of that question turns on the meaning of the phrase "competitive basis" in § 2887(a)(2)(A). WIA does not specifically define the phrase "competitive basis." In plaintiff's view, read together with selection among the eligible entities, a procurement is conducted "on a competitive basis" only if every eligible entity is permitted to participate. Pl.'s Mot. 23–24. In essence, plaintiff argues that WIA mandates what CICA describes as full and open competition.[7] This view precludes DOL from using small business set asides to select a JCC operator. Defendant, however, argues that WIA requires only "competition," which can be achieved with as few as two eligible entities. Def.'s Mot. 22. Thus, defendant views selection on a competitive basis to be similar to what CICA calls "competitive procedures," which allow for small business set asides. *See* 41 U.S.C. § 3303(b).

The plain language of WIA provides no evidence that Congress intended to prohibit set asides in JCC procurements. Indeed, nothing in WIA references Congress's policy of promoting

---

[7] Plaintiff denies taking the position that WIA requires full and open competition. Pl.'s Mot. 25 n.48, 28 n.51. Nevertheless, the Court can divine no meaningful difference between plaintiff's interpretation of WIA and full and open competition as defined in CICA.

contracting with small businesses. The definition of "competition" does not require unrestricted competition, but merely that at least two contestants vie for some opportunity. *Black's Law Dictionary* 322 (9th ed. 2009) (defining "competition" as "the effort or action of two or more commercial interests to obtain the same business from third parties"). Plaintiff does not dispute that set asides are competitive, Pl.'s Opp'n 7, but responds that Congress intended the phrase "competitive basis" in WIA to mean something other than the usual definition of "competition." Pl.'s Mot. 23 n.47. Specifically, plaintiff argues that, by allowing government agencies and vocational schools to operate JCCs, Congress demonstrated its intent that the phrase "competitive basis" should have a meaning inconsistent with Congress's well-established policy of promoting small business participation in government contracting.[8]

Generally, the words of a statute should be interpreted according to their ordinary meaning. *Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2002 (2012). Courts that have analyzed plaintiff's argument have consistently rejected plaintiff's interpretation. *Adams (Shriver)*, 109 Fed. Cl. at 351–52 ("[T]here is nothing in the list [of eligible entities] which dictates that every procurement should be open to all types of entities."); *DESI*, 109 Fed. Cl. at 321 (same); Hr'g Tr. 12:1–5, *Adams (Gadsden)* ("[T]he term 'competitive basis' in WIA does not suggest that the opportunity to compete for a Job Corps center contract must be open to any and every business. Competitive basis does not mean unrestricted basis."); *see also Res-Care*, 107 Fed. Cl. at 141–42.

Moreover, if Congress wished to prohibit set asides, it could have either said so explicitly or used the term "full and open competition," which is defined to prohibit set asides. FAR 2.101 ("Full and open competition . . . means that all responsible sources are permitted to compete."). Instead, Congress used the term "competitive basis," which has generally been interpreted to refer to any procedures involving consideration of at least two bids (i.e., all procedures that are not "sole source"). *See, e.g.*, *Valley Forge Flag Co. v. Kleppe*, 506 F.2d 243, 244 (D.C. Cir.

---

[8] Congress's policy favoring small business participation extends to industries in which small businesses have had difficulty competing with large businesses. Congress amended the Small Business Act in 1986 to require agencies to increase small business participation in industries in which small businesses had traditionally struggled to compete. National Defense Authorization Act for Fiscal Year 1987 ("NDAA of 1987"), Pub. L. No. 99-661, § 921(a), 100 Stat. 3816, 3926–27. While considering this 1986 amendment to the Small Business Act, the House Armed Services Committee "strongly urge[d] further emphasis and market research to assess the capabilities of small businesses to perform in industry sectors not traditionally dominated by small business and specific efforts to encourage such participation when appropriate." H.R. Rep. No. 99-718, at 259 (1986). Indeed, Congress intended to assist businesses which, because of their size, could not offer the same low prices as large businesses and understood that this would result in the Government paying higher rates. *Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260, 1275 (5th Cir. 1978) ("We recognize that the policies of the Small Business Act are to some extent inconsistent with what might be perceived as the primary function of the DLA, to supply the procurement needs of the armed forces at minimum cost."); *Ray Baillie Trash Hauling, Inc. v. Kleppe*, 477 F.2d 696, 708 (5th Cir. 1973) ("The [Small Business] Act is based on the premise that [small businesses] are unable to compete effectively in the marketplace and therefore cannot secure government procurement contracts awarded through competitive bidding.").

1974) (acknowledging the Small Business Administration's representation that "if and when bids [to produce interment flags] are resolicited . . . they will be done so on a competitive basis among small businesses"); *Infiniti Info. Solutions, LLC v. United States*, 92 Fed. Cl. 347, 351 n.9 (2010) (describing a Department of Housing and Urban Development "delegation" allowing for a contract to be awarded "on either a sole source or competitive basis"); *Myers Investigative & Sec. Servs., Inc. v. United States*, 47 Fed. Cl. 605, 608 (2000) (describing a procurement set aside for socially or economically disadvantaged contractors under the Small Business Administration's § 8(a) program as "awarded on a competitive basis"), *aff'd*, 275 F.3d 1366 (Fed. Cir. 2002).

Plaintiff also argues that the definition of "competitive basis procedures" in 41 U.S.C. § 3302(c) should inform the meaning of "competitive basis" in 29 U.S.C. § 2887(a)(2)(A). Section 3302(c)(2) explains that, "[f]or purposes of this subsection, an individual purchase of property or services is made on a competitive basis only if it is made pursuant to procedures that—(A) require fair notice of the intent to make that purchase . . . to be provided to all contractors offering the property or services under the multiple award contract." While a definition of a similar phrase is often helpful, this particular definition provides little guidance in interpreting § 2887(a)(2)(A). First, Congress specifically stated that § 3302(c)(2) is applicable only "for purposes of" § 3302(c). Second, § 3302(c)(2) only requires extending competition to contractors that have been selected for a multiple-award contract. This procurement involves no multiple-award contract or contractors offering any property or services under a multiple-award contract. It is therefore unclear how § 3302(c)(2) could inform the definition of "competitive basis" in § 2887(a)(2)(A), at least as it applies to this procurement.

Plaintiff's final statutory-construction argument is that because 29 U.S.C. § 2887(a)(2)(A) references 41 U.S.C. § 3304(a)–(c), exceptions to full and open competition for sole-source procurements, Congress intended that none of CICA's other exceptions to full and open competition apply. Pl.'s Mot. 27–29. Defendant does not dispute that the only exceptions to selection on a competitive basis in WIA are those contained in § 3304(a)–(c), but defendant contends that, notwithstanding WIA's reference to § 3304(a)–(c), selection on a competitive basis is not the same as full and open competition. As discussed above, selection on a competitive basis does not require unrestricted, "full and open" competition. Plaintiff cites *Ventas, Inc. v. United States*, 381 F.3d 1156, 1161 (Fed. Cir. 2004) for the maxim of statutory construction "*expressio unius est exclusio alterius*." It is true that Congress did not intend to create any exceptions *to selection on a competitive basis* other than § 3304(a)–(c). But *Ventas* provides no support for plaintiff's argument that selection on a competitive basis requires full and open competition.

As plaintiff notes, the Court's interpretation of § 2887(a)(2)(A) is consistent with the default rules of CICA. Pl.'s Mot. 29. The rules of statutory construction favor interpreting a statute to be consistent with other statutes, particularly where Congress has expressed no intent to create an exception to the existing law. *Cf. Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 130 S. Ct. 2433, 2447 (2010) ("Where the text permits, congressional enactments should be construed to be consistent with one another."); 2A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 47:11 (7th ed. 2007) ("[E]xceptions are not to be implied. An exception cannot be created by construction.").

11

>      2.   DOL Was Not Required to Conduct a "Predicate Determination" as a
>           Prerequisite to a Set Aside

As referenced above, plaintiff argues that DOL was required to determine whether a set aside would be "in the interest of assuring that a fair proportion" of JCC contracts are placed with small businesses before it could set aside the Dayton contract.  Pl.'s Mot. 32–34.  According to plaintiff, this requirement derives from the Small Business Act and FAR Part 19.  The Small Business Act states:

> [S]mall-business concerns . . . shall receive any award or contract . . . as to which it is determined by the [Small Business] Administration and the contracting procurement or disposal agency . . . to be in the interest of assuring that a fair proportion of the total purchases and contracts for property and services for the Government in each industry category are placed with small-business concerns . . . .  A contract may not be awarded under this subsection if the award of the contract would result in a cost to the awarding agency which exceeds a fair market price.

15 U.S.C. § 644(a).  Through the use of set asides, FAR Part 19 implements the requirement of § 644(a) to assure that a fair proportion of contracts are placed with small businesses:

> The contracting officer shall set aside an individual acquisition . . . for competition among small businesses when . . . [a]ssuring that a fair proportion of Government contracts in each industry category is placed with small business concerns; and the circumstances described in 19.502-2 or 19.502-3(a) exist.

FAR 19.502-1(a).

Each provision, on its face, mandates that certain contracts be set aside for competition among only small businesses.  Section 644(a) mandates that small businesses "shall receive" awards and FAR 19.502-1(a) specifies when the contracting officer "shall set aside" procurements.  Plaintiff also reads these provisions to create limits on set asides—in other words, to state when procurements *shall not* be set aside.

Courts have consistently held that, when an agency reasonably expects that the award will be made at fair market prices, § 644(a) does not prohibit set asides made without a "fair proportion" determination.  *J.H. Rutter Rex Mfg. Co. v. United States*, 706 F.2d 702, 711 (5th Cir. 1983); *Adams (Shriver)*, 109 Fed. Cl. at 353–54; *DESI*, 109 Fed. Cl. at 323–24; Hr'g Tr. 17:8–10, *Adams (Gadsden)*.  Plaintiff argues, however, that Congress amended the Small Business Act in 1986 to reverse the holding of *Rutter Rex*.  Pl.'s Mot. 38.

In *Rutter Rex*, the Fifth Circuit first held that the fair proportion need not be measured against each individual industry, but applied more broadly agency-wide or even government-wide.  706 F.2d at 710–11.  The Fifth Circuit then also upheld the interpretation of the Department of Defense that the "fair proportion" requirement was a "floor" encouraging set asides when small businesses were not receiving a fair proportion of contracts, but not a "ceiling" prohibiting set asides when small businesses already received more than a fair

proportion of contracts. *Id.* at 711. In its 1986 amendment to the Small Business Act, Congress reversed the former holding, but made no change to the latter.

The NDAA of 1987 made three relevant changes to the Small Business Act. First, as described above, Congress amended § 644(a) to prevent agencies from ignoring small business participation in certain industries. Specifically, Congress required agencies to consider whether small businesses were receiving a fair proportion of contracts in each individual industry. NDAA of 1987 § 921(a). Second, Congress added the requirement that agencies may only award set aside contracts at fair market prices. *Id.* § 921(b). Third, Congress required the Small Business Administration to adjust the small business size standard for industries in which small business set asides accounted for more than 30 percent of the dollar value of all contract awards. *Id.* § 921(f)(2).

Plaintiff argues that the first provision, § 921(a), was intended to reverse both of the *Rutter Rex* holdings, and thus to require that *exactly*—not *at least*—a fair proportion of small business contracts in each industry category be awarded to small businesses. The Committee on Armed Services stated that such an amendment "would require agencies to ensure that a fair proportion of contracts per industry category, rather than overall agency contracts, be awarded to small businesses." H.R. Rep. No. 99-718, at 258. Neither the statute nor the committee report ever state that this would require that agencies *not* set aside any proportion of contracts. Rather, Congress hoped that requiring agencies to ensure that small businesses are awarded a fair proportion of contracts in industries in which small businesses had previously been underutilized would eliminate agencies' motives for setting aside very large percentages of contracts in other industries. *Id.* at 258–59. But the amendment requiring that the fair proportion analysis be conducted in each individual industry did not affect *Rutter Rex*'s other holding that the fair proportion provision created only a floor, not also a ceiling, for the number of set asides.

In contrast to § 921(a), § 921(b) and § 921(f)(2) limit the number of set asides. § 921(b) (amending § 644(a) to state that a "contract may not be awarded" if the cost would exceed a "fair market price"); § 921(f)(2) (amending § 632 to require the Small Business Administration to adjust small business size standards to "reduce the number of contracts which may be set aside" to approximately 30 percent of the value of contracts awarded in the industry category). In 1988, however, Congress repealed the provision calling for the Small Business Administration to adjust size standards to achieve 30 percent small business participation in each industry. Business Opportunity Development Reform Act of 1988, Pub. L. No. 100-656, § 732, 102 Stat. 3853, 3897 (1988).[9] Thus, § 921(b), the fair-market-price requirement, is the only one of these 1986 amendments to the Small Business Act that still limits an agency's ability to set aside contracts.

At the set aside stage, the "Rule of Two" regulations implement both the goal of awarding a fair proportion of contracts to small businesses and the requirement that the award be made at a fair market price. *See* FAR 19.502-2(b); *see also Rutter Rex*, 706 F.2d at 705–06 (explaining that the regulations that became the "Rule of Two" were "intended to implement the

---

[9] The Small Business Administration is now required to set size standards to "reflect the differing characteristics of the various industries." 15 U.S.C. § 632(a)(3).

13

requirements of the procurement statutes"); *Adams (Shriver)*, 109 Fed. Cl. at 353–54; *DESI*, 109 Fed. Cl. at 323–24; *Delex Sys. Inc.*, B-400403, 2008 WL 4570635, at *5 (Comp. Gen. Oct. 8, 2008) ("[T]he Rule of Two is intended to implement the Small Business Act language in 15 U.S.C. sect. 644(a) . . . ."). The FAR also reflects Congress's intent that at least a fair proportion of contracts be placed with small businesses, FAR 19.502-1(a) (stating that the contracting officer "shall set aside" contracts in order to achieve a fair proportion of small business participation), but set asides should be limited to cases when the agency can award the contract to a small business at a fair market price. FAR 19.502-2(b)(2) ("Award will be made at fair market prices. Total small business set-asides *shall not* be made unless such a reasonable expectation exists." (emphasis added)).

Plaintiff cites *Library Systems & Services/Internet Systems, Inc.*, B-244432, 1991 WL 222409 (Comp. Gen. Oct. 16, 1991), in which the GAO held that DOL improperly decided *not* to set aside a contract without determining whether a fair proportion of contracts were placed with small businesses or whether the Rule of Two was satisfied. That outcome is consistent with *Rutter Rex*'s surviving holding that a "fair proportion" is a floor below which set asides may be required, but not a ceiling above which set asides are prohibited. *See* 706 F.2d at 711. Therefore, DOL did not violate § 644(a) by setting aside the Dayton JCC contract without determining whether a fair proportion of JCC contracts had been placed with small businesses.

### D. DOL's Rule of Two Analysis Was Not Arbitrary or Capricious

Plaintiff also claims that DOL improperly conducted the analysis that led to its decision to set aside the Dayton contract. The Court reviews the contracting officer's analysis to determine whether it was arbitrary or capricious, a standard requiring only that the action be supported by a rational basis. 28 U.S.C. § 1491(b)(4) (citing 5 U.S.C. § 706); *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1350–51 (Fed. Cir. 2004). In particular, a "contracting officer's determination under FAR § 19.502-2 'concerns a matter of business judgment within the contracting officer's discretion that . . . will not [be] disturb[ed] absent a showing that it was unreasonable.'" *Global Computer Enters., Inc. v. United States*, 88 Fed. Cl. 350, 445 (2009) (alterations in original) (quoting *In re Quality Hotel Westshore*, B-290046, 2002 WL 1162918, at *2 (Comp. Gen. May 31, 2002)).

An agency's decision is reasonable if there is a "rational connection between the facts and the decision made." *MCS Mgmt., Inc. v. United States*, 48 Fed. Cl. 506, 516 (2000). The Court will sustain the agency's action if it "evinc[es] rational reasoning and consideration of relevant factors." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000).

The Rule of Two does not mandate any particular method for assessing the availability of small business bidders. *MCS Mgmt.*, 48 Fed. Cl. at 511. "[P]rior procurement history, the nature of the contract, market surveys, and/or advice of the agency's small business specialist" are all approved bases for the decision. *Id.* In particular, while in this case DOL's set aside memorandum identified two particular small businesses which DOL believed to be responsible and likely to submit offers, the Rule of Two only requires the agency to have a "reasonable expectation" that it will receive at least two offers from *some* responsible small businesses, not

14

necessarily any two specific small businesses. *Adams (Shriver)*, 109 Fed. Cl. at 355; *DESI*, 109 Fed. Cl. at 325.

### 1. DOL Did Not Improperly Isolate the Dayton JCC Set Aside Decision

Plaintiff argues that the contracting officer incorrectly analyzed small businesses' interests in operating the Dayton JCC without considering those same small businesses' interests or obligations in operating other JCCs. Pl.'s Mot. 47–48. More broadly, plaintiff argues that, over the course of six months ending with the Dayton set aside decision, DOL set aside twelve JCC contracts for small businesses and awarded two other contracts to small businesses, with knowledge that at most four small businesses were capable of operating JCCs. *Id.* Plaintiff cites documents from the administrative records of the other recent JCC set aside protests, requesting that the Court supplement the administrative record in this case with these documents. *E.g.*, App. Exs. 5–10, 12–14, 16–17, 19, 21, 23–26, 32–34, 36, 41–42, 57.

Plaintiff's argument is most properly directed not at DOL's set aside of the Dayton contract but at Congress's policy of promoting contracting with small businesses and the implementation of those policies in the FAR through the Rule of Two. Plaintiff's argument suggests that DOL will eventually be unable to award all of the contracts it has set aside to only the small businesses that have responded to its RFIs.

But the Rule of Two does not require that the eventual award be made to one of the RFI respondents. One could imagine a policy less favorable to small business in which contracts would not be set aside unless the contracting officer could be sure that at least two capable small businesses would definitely submit offers that would be no more expensive than offers from large businesses. But this is not the policy designed by Congress or implemented by the FAR. Instead, the FAR provides for set asides based on the contracting officer's "reasonable expectation," implicitly accepting the possibility that that expectation may ultimately prove incorrect. When DOL evaluates offers, if [***] and [***] are operating additional JCCs and are no longer capable of operating the Dayton JCC, the contracting officer can award the contract to another small business or rescind the set aside and solicit offers from large businesses.

Moreover, plaintiff's argument is not specific to the decision at issue in this case. Plaintiff's argument is capable of demonstrating, at most, that DOL may not award all set aside contracts to small businesses. The evidence plaintiff provided from other protests does not, however, suggest that DOL will not be able to award *the Dayton contract* to a small business, much less that two responsible small businesses will not even submit offers. In fact, while plaintiff contends that [***] has responded to most of DOL's JCC RFIs, plaintiff has not alleged that [***] responded to any JCC RFIs other than Dayton. *See, e.g.*, Pl.'s Mot. 13.

Instead, plaintiff cites a statement made by Judge Bruggink during a December 14, 2012 hearing in *DESI* that it "makes no sense" to set aside eleven procurements on the basis of three or four entities. Hr'g Tr. 56:20–57:6, *DESI* (docket entry 62, Dec. 18, 2012). The Court agrees with Judge Bruggink's characterization of the potential problems with current policy, but also agrees with his ultimate conclusion that these problems do not violate the FAR:

> The Rule of Two is part of a larger framework in the FAR established to benefit small businesses. All that is required is a reasonable expectation. The threshold for meeting the criteria of the Rule of Two is purposefully low and is counterbalanced by FAR provisions that provide direction in the event of a failed set-aside.

*Adams (Shriver)*, 109 Fed. Cl. at 357; *see also Res-Care*, 107 Fed. Cl. at 142 ("Such guilt by association may have been an exercise in common sense, but it would only have informed a policy judgment. It does not draw into question the particular determination made here."). Therefore, the materials from the other procurements do not show that DOL's analysis was arbitrary or capricious. Accordingly, the materials from other protests are not necessary for effective judicial review, and will not be included in the AR. *See Axiom*, 564 F.3d at 1381.

        2.      <u>DOL Considered Relevant Factors</u>

Plaintiff also argues that DOL failed to consider relevant factors, including small businesses' capability and capacity to operate the Dayton JCC, past performances operating other JCCs, and indirect cost rates. Pl.'s Mot. 51. Plaintiff contends that these omissions infected DOL's determinations that two small businesses were capable of operating the Dayton JCC as well as that the award would be made at a fair market price.

        a.      DOL Reasonably Expected to Receive Offers from At Least Two Capable Small Businesses

Plaintiff argues that DOL improperly found [***] and [***] to be "capable" without considering their capabilities, their capacities to operate an additional JCC, or their past performances operating JCCs. Pl.'s Mot. 55. Defendant responds that the contracting officer was not required to analyze market research at anywhere near the level of detail plaintiff asserts was required. Def.'s Reply 11–17.

The FAR and case law favor set asides by requiring significantly more in-depth analysis when an agency decides *not* to set aside a contract than when the agency opts to proceed with a set aside. Unlike an agency's decision to conduct an unrestricted procurement, the agency need not document a set aside decision. *Compare* FAR 6.203(b), *with* FAR 19.502-2(a); *see also* 48 C.F.R. § 2919.502 (DOL regulation requiring documentation of market research in support of unrestricted procurements, but not set asides). These policies are balanced not by strict rules of when a procurement will not be set aside, but by FAR provisions that provide for correction in the event that a set aside fails. *Adams (Shriver)*, 109 Fed. Cl. at 357; *DESI*, 109 Fed. Cl. at 328.

In accordance with these policies, the contracting officer is not required to find that any two particular small businesses are responsible; she need only reasonably expect that two responsible small businesses will submit offers. *Adams (Shriver)*, 109 Fed. Cl. at 356; *DESI*, 109 Fed. Cl. at 326; *see also McKing Consulting Corp. v. United States*, 78 Fed. Cl. 715, 726 (2007) ("[T]he actual merits of the individual bids are not dispositive on the issue of the reasonableness of the contracting officer's expectations."); *Greenleaf Constr. Co. v. United States*, 67 Fed. Cl. 350, 361 (2005) ("The logic behind the Rule [of Two] is obvious—it may not be possible for a CO to gauge bidder responsibility and price fairness before a solicitation is even issued."). *But*

16

*see Benchmade Knife Co. v. United States*, 79 Fed. Cl. 731, 738 (2007) (upholding a decision not to set aside a procurement where the relevant market contained only one small business). Indeed, the GAO has stated that "it would be impractical to require contracting officers to make responsibility determinations or anything close thereto prior to setting aside procurements." *Fermont Division, Dynamics Corp. of Am.*, 59 Comp. Gen. 533, 539–40 (1980).

Therefore, the fact that six small businesses responded to the RFI, standing alone, could have been sufficient to form a reasonable expectation of offers from two responsible small businesses. *McKing*, 78 Fed. Cl. at 725 ("If four companies expressed interest in the project before the actual Solicitation was even issued, the contracting officer certainly could have reasonably expected that at least two of those companies would submit responsive bids."). Alternatively, DOL could have reasonably expected two responsible small businesses to submit offers based upon small business responses to previous JCC solicitations. *Geronimo Serv. Co.*, B-2316737, 1988 WL 227930, at *2 n.2 (Comp. Gen. Sept. 22, 1988) ("For example, we think the contracting officer properly could decide that, notwithstanding the differences between the Navy's procurement and this one, the two procurements were sufficiently similar such that the results in the Navy procurement were a reliable indication of the extent of small business participation that could be expected here."). DOL's analysis of the capability of the six small businesses that responded exceeded the minimum necessary to satisfy the Rule of Two. Accordingly, DOL's expectation of receiving offers from two capable small businesses was not arbitrary or capricious.

Plaintiff also contends that DOL failed to investigate whether [***] and [***] could operate the Dayton JCC without increasing their receipts above the SBA's small business size standard. Pl.'s Mot. 59. In general, the size of a business is measured as an average of that business's annual receipts over the past three years. 13 C.F.R. § 121.104(c)(1). Therefore, increased receipts from operation of additional JCCs would not eliminate a business from small business status until one to three years later. SBA measures the size of a business, however, at the time the business submits its initial offer. 13 C.F.R. § 121.404(a). Therefore, it is consistent with small business regulations for DOL to award a set aside contract to a business that is likely to grow beyond small business standards during the life of the contract.

      b.  DOL Reasonably Expected That the Award
         Would Be Made at a Fair Market Price

As described above, Congress passed the Small Business Act and its amendments intending to assist small businesses, particularly those that are not able to contract at the same low rates as large businesses. *See supra* n.8 (citing *Ray Baillie*, 477 F.2d at 708; *Kinnett Dairies*, 580 F.2d at 1275). Accordingly, a "fair market price" in the Rule of Two context is "a price based on reasonable costs under normal competitive conditions and not on lowest possible cost." FAR 19.001. Plaintiff's arguments—that small businesses, in general, are more expensive and less effective at operating JCCs—ignore that Congress created its policy favoring small businesses with the understanding that some benefit of lower prices from large businesses would be lost.

The most natural method of forming a reasonable expectation that an award will be made at a fair market price is to rely on the contracting officer's expectation of competitive bidding.

17

*Walden Sec.*, B-407022, 2012 WL 4903367, at *5 (Comp. Gen. Oct. 10, 2012). That was exactly the method the contracting officer reasonably relied upon in this case.

## CONCLUSION

WIA does not prohibit set asides, and the Small Business Act's "fair proportion" provision does not prohibit DOL from setting aside more than a fair proportion of JCC contracts. Therefore, DOL did not violate applicable laws or regulations by setting aside the Dayton contract. Additionally, DOL's Rule of Two analysis was not arbitrary, capricious, or an abuse of discretion. Consequently, the Court **GRANTS** defendant's motion for judgment on the administrative record and **DENIES** plaintiff's motion for judgment on the administrative record. Plaintiff's motion to supplement the administrative record is **GRANTED IN PART** as it relates to the emails filed by defendant on March 3 and **DENIED IN PART** as it relates to documents plaintiff has submitted from the administrative records of other protests. Defendant's motion to dismiss is **DENIED**.

The Clerk shall enter judgment in favor of defendant.

Some information contained herein may be considered protected information subject to the protective order (docket entry 14, Sept. 13, 2012) entered in this action. This Opinion and Order shall therefore be filed under seal. The parties shall review the Opinion and Order to determine whether, in their view, any information should be redacted prior to publication in accordance with the terms of the protective order. The Court **ORDERS** the parties to file a joint status report by **Monday, August 5, 2013**, identifying the information, if any, they contend should be redacted, together with an explanation of the basis for each proposed redaction.

**IT IS SO ORDERED.**

                                        s/ George W. Miller
                                        GEORGE W. MILLER
                                             Judge